**TOM PETRUS & MILLER, LLLC**

RICHARD B. MILLER        3729-0
rmiller@tpm-hawaii.com
Telephone: (808) 792-5855
ASHLEY R. SHIBUYA        10200-0
ashibuya@tpm-hawaii.com
Telephone:  (808) 792-5804
Finance Factors Center
1164 Bishop Street, Suite 650
Honolulu, Hawaii  96813
Telephone: (808) 792-5800
Facsimile:  (808) 792-5809

Attorneys for Plaintiff
DB INSURANCE CO., LTD (U.S. BRANCH)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DB INSURANCE CO., LTD. (U.S. BRANCH),<br><br>               Plaintiff,<br><br>vs.<br><br>THALABERT HOLDINGS LTD., a Canadian Company,<br><br>               Defendant. | CIVIL NO. CV<br>(Declaratory Relief)<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff DB INSURANCE CO., LTD. (U.S. BRANCH) ("DB"), by and

through its attorneys, Tom Petrus & Miller, LLLC, for its Complaint for

Declaratory Judgment against Defendant THALABERT HOLDINGS LTD. ("Thalabert") alleges and avers as follows:

## JURISDICTION AND VENUE

1. DB is a corporation organized under the laws of the Republic of Korea and does business in Maui County, State of Hawaii.

2. Upon information and belief, Thalabert is a Canadian Company incorporated in British Colombia, Canada, and owns the property located 43 Nonohe Place, Paia, Hawaii 96779 (the "Property").

3. DB brings this action pursuant to 28 U.S.C. §1332 and 28 U.S.C. §2201, asking this Court to determine, as a matter of law, that it has no duty under the subject Dwelling Fire Policy to participate in an appraisal of certain alleged claims for increased construction costs and loss of use damages arising from a fire that occurred at the Property on August 27, 2020 and which were never submitted to DB as a claim.

4. There is complete diversity of citizenship between the parties, and the amount in controversy herein exceeds $75,000.

5. All or a substantial portion of the events giving rise to this action occurred within the State of Hawaii.

6. Venue lies in this Court pursuant to 28 U.S.C. §1391.

7. There is an actual and continuing controversy between DB and Thalabert as to DB's obligation to participate in an appraisal for alleged damages for which the insured has not previously submitted a claim.

## BACKGROUND

8. Upon information and belief, on August 27, 2020, a fire occurred at the dwelling located on the Property (the "Insured Dwelling").

9. That same day, DB, which insured the Property under a Dwelling Fire Policy, Policy No. DDF 1400789 07 (the "Policy"), was notified of the fire. The loss was assigned DB Claim No. 20DDF0000145 (the "Claim").

10. DB's independent Adjuster, John Mullen and Company, Inc. ("John Mullen") was assigned to handle the Claim on behalf of DB.

11. On August 28, 2020, John Mullen adjuster Kevin Frost ("Adjuster Frost") conducted an initial inspection of the Insured Dwelling and discussed next-steps for the Claim with Thalabert representative Jochanan Aronowicz.

12. On September 9, 2020 John Mullen was informed that Thalabert had retained Hawaii Public Adjusters ("HPA") as its public adjuster for the Claim.

13. On September 24, 2020, John Mullen, on behalf of DB, issued a letter to HPA stating that DB would be investigating the Claim pursuant to a reservation of its rights under the subject Policy.

14. Thereafter, John Mullen, on behalf of DB, retained Edward P. Bonollo of Paradise Fire Consultants to provide a cause and origin evaluation of the loss and AJ Stuart of Premier Restoration to provide an estimate of the damages to the Insured Dwelling.

15. After several months, John Mullen and its experts were finally permitted by Thalabert and HPA to inspect the Insured Dwelling.

16. On January 12, 2021, John Mullen received Thalabert's Proof of Loss Binder, dated January 5, 2021, for the Claim (the "POL Binder").

17. Pursuant to the POL Binder, Thalabert's Claim and request for compensation under the Policy was limited to damages to the Insured Dwelling as a result of the August 27, 2020 fire:

> The claim for **Thalabert Holdings Ltd.** losses are summarized as follows:

| | |
|---|---|
| **Dwelling – Replacement Cost Value (RCV)** | $ 870,860.01 |
| **Less Depreciation (recoverable upon completion of the work)** | ($ 19,071.23) |
| **Dwelling – Actual Cash Value (ACV)** | $ 851,788.78 |
| **Less Policy Deductible** | ($ 2,500.00) |
| **Total ACV Currently Due (less any prior payments)** | $ 849,288.78 |

> **Thalabert Holdings Ltd.** is requesting that DB Insurance promptly review and finalize this claim so that the ACV funds will be released, and they could begin repairs as soon as possible.

18. By letter dated April 19, 2021, DB's counsel informed HPA and Thalabert that DB would make payment on the Claim as follows:

| | |
|---|---:|
| Replacement Cost Value | $870,860.01 |
| Depreciation | (-$80,041.93) |
| Deductible | (-$2,500.00) |
| **Actual Cash Value** | **$788,318.08** |

19. The April 19, 2021 letter further confirmed DB's understanding that the Claim constituted only a claim for property damage to the Insured Dwelling.

20. Payment in the amount of $788,318.08 was thereafter sent by John Mullen to HPA for Thalabert.

21. By letter dated May 19, 2021, Thalabert's counsel invoked the Policy's appraisal provision, demanding appraisal as to the actual cash value/depreciation for the damages to the Insured Dwelling. Thalabert appointed Chris Arnold ("Appraiser Arnold") as its appraiser.

22. On June 8, 2021, DB, through counsel, appointed James N. Reinhardt ("Appraiser Reinhardt") as its appraiser.

23. By letter dated June 17, 2021, DB's counsel requested that Thalabert's counsel clarify whether the scope of his client's demand for an appraisal was limited to the Insured Dwelling's actual cash value, that being the only noted difference in the parties' valuation of the Claim.

24. On June 17, 2021, Thalabert's counsel confirmed that his client's demand for appraisal was limited to the difference in the depreciation for the Insured Dwelling.

25. On November 4, 2021, DB's counsel emailed Appraisers Reinhardt and Arnold, with a copy of Thalabert's counsel, to inquire whether an umpire had been appointed and, if so, the status of the Appraisal. DB's counsel forwarded this email to HPA Adjuster Robert Joslin ("Adjuster Joslin") upon learning that Thalabert's counsel was no longer representing Thalabert on the Claim.

26. On November 5, 2021, Appraiser Reinhardt informed the parties that the Appraisers had appointed the Honorable Joel August (ret.) as the Umpire and that the Appraisers disagreed whether the scope of the Appraisal was limited to the disputed amount of depreciation for the Insured Dwelling or also included increased costs of construction materials since January 2021.

27. That same day, DB's counsel confirmed in an email to Judge August, Appraiser Reinhardt, Appraiser Arnold, and Adjuster Joslin that DB was of the understanding that the only matter to be submitted to the Appraisers was the disputed depreciation for the Insured Dwelling.

28. On November 17, 2021, DB's counsel sent a follow up email to the Appraisers and Judge August regarding the scope of the parties' Appraisal and suggested a telephone conference to clarify the matter. Judge August responded

that he was no longer serving as the Umpire.

29. On November 18, 2021, DB's counsel emailed the Appraisers and Adjuster Joslin requesting that, once a new umpire was appointed, the Appraisal Panel (the "Panel") and Parties convene to confirm the scope of the Appraisal. This email was met with disapproval and disagreement from Adjuster Joslin and Appraiser Arnold.

30. In light of comments made by Adjuster Joslin and Appraiser Arnold, on November 22, 2021, DB's counsel suggested that, if the Appraisers did not wish to participate in a conference, Adjuster Joslin communicate to DB's counsel his understanding regarding the scope of the appraisal—if the parties agreed as to the scope of the Appraisal, the same could then be communicated to the Appraisers; if not, DB's counsel indicated that the issue may need to be presented to a court to determine.

31. On November 23, 2021, DB's counsel emailed Adjuster Joslin and reiterated her request that he confirm Thalabert's understanding regarding the scope of the parties' Appraisal and explained that, based on the representations of Thalabert's former attorney, DB understood the Appraisal was to be limited to the disputed depreciation for the Insured Dwelling. In an email response sent later that day, Adjuster Joslin replied, "Anyway, I disagree."

32. DB's counsel emailed Adjuster Joslin on November 24, 2021,

7

December 6, 2021, and January 11, 2022 requesting Thalabert's understanding regarding the scope of the Parties' Appraisal.

33. In a January 11, 2022 email, Adjuster Joslin refused counsel's request for clarification and accused DB of attempting to "control" the Appraisal.

34. On January 18, 2022, DB's counsel emailed the Appraisers and Adjuster Joslin regarding the parties' impasse. While DB objected to Appraiser Arnold and Adjuster Joslin's refusal to set the scope of the Appraisal, in an effort to move the claim forward, DB would allow the Appraisal to proceed, subject to a reservation of rights under the Policy, including the right to challenge the scope of any award.

35. On January 26, 2022, Appraiser Reinhardt, upon the direction of the Appraiser's newly designated umpire, the Honorable Shackley Raffetto (Ret.), advised DB's counsel that the Appraisers remained at an impasse regarding the scope of the Appraisal. According to Appraiser Reinhardt, his appointment was limited to determining the disputed depreciation for the Insured Dwelling; however, Appraiser Arnold maintained the Panel also had to address the issue of increased construction materials costs and lost rental value.

36. Neither the issue of increased costs of construction materials nor lost rental value had been submitted to DB as part of Thalabert's Claim, which was limited to the damages to the Insured Dwelling. Appraiser Reinhardt's January 26,

2022 email was also the first time DB was made aware that Thalabert intended to pursue a claim for lost rental value.

37.     On February 1, 2022, DB's counsel emailed the Panel and Adjuster Joslin regarding the status of the appraisal and the dispute regarding its scope. Counsel (1) reiterated DB's prior position that the scope of the appraisal was limited to the disputed depreciation of the Insured Dwelling; (2) informed the Panel and Adjuster Joslin that Thalabert's purported claims for increased construction costs and lost rents were precluded from appraisal because no claim for these items had been submitted to DB in the first instance; and (3) invited Thalabert to submit a claim on the alleged increased construction costs and its lost rents for DB's consideration.

38.     Adjuster Joslin disagreed, asserting in a February 1, 2022 email that the claim period had "come and gone" because the Parties were in appraisal.

39.     In response to counsel and Adjuster Joslin's emails, Appraiser Reinhardt opined that the Panel was directed only to address the value of the disputed depreciation and that, if the Parties wished the Panel to address other issues, those issues must be assigned to the Panel by agreement of the Parties.

40.     Thereafter, Judge Raffetto, through Dispute Prevention & Resolution, Inc., informed the Parties and Appraisers as follows:

> If Chris and Jim have agreed on the appraisal re depreciation, then nothing else need be done.  If the BOTH agree in writing to request an Umpire to

decide any disagreements about other issues (e.g., lost profits or material cost increases) they should submit the specific issues and request for assistance in writing and we can go from there.

41. On June 2, 2022, DB's counsel sent a follow-up correspondence to Adjuster Joslin inquiring whether Thalabert would be submitting a claim for loss of use damages and/or increased construction costs relating to the August 27, 2020 fire.

42. That same day, DB's counsel also emailed a request for an update from the Appraisers and inquired on the status of an award on the disputed depreciation.

43. In his email response, Appraiser Reinhardt informed the Parties that while the Appraisers agreed to the value of the disputed depreciation, Appraiser Arnold refused to sign the award because he believed the issues of increased materials costs and lost rental income should be included in the Appraisal.

44. On June 23, 2022, DB's counsel issued a letter to Adjuster Joslin, reiterating DB's position that any claim for loss of use or increased construction costs were ineligible for appraisal since no claim regarding those items had been submitted to DB. DB's position was based on the Policy's appraisal provision, which states, as relevant, "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss."

45. Based on Thalabert's previously communicated position regarding the

10

scope of the Parties' Appraisal, the June 23, 2022 letter further requested that Thalabert either (1) submit a claim for the alleged increased costs of construction and loss of use damages; or (2) withdraw said damages from the Parties' pending Appraisal. The letter maintained that if no claim or notice of withdrawal was received, DB may be required to file a declaratory action to resolve the scope of the Appraisal.

46. To date, no claim for increased construction costs or loss of use damages has been submitted by Thalabert to DB nor has DB been notified that Thalabert intends to withdraw these items from the Parties' Appraisal.

## THE POLICY

47. Thalabert is the named insured under a Dwelling Fire Policy issued by DB for the Property during the policy period from August 4, 2020 to August 4, 2021. The Policy's property coverage is written on the Dwelling Property 3 – Special Form, Form No. DP 00 03 12 02, as amended, and provides the following relevant terms and conditions

**CONDITIONS**
. . .

**G.   Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or

we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separate set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

   **1.**   Pay its own appraiser; and

   **2.**   Bear the other expenses of the appraisal and umpire equally.

## STATEMENT OF CLAIM

48.   DB re-alleges and incorporates by reference the allegations contained in Paragraphs 1 to 47 of this Complaint as though fully set forth herein.

49.   Under the terms of the Policy, either DB or the insured may demand an appraisal if they "fail to agree on the amount of loss".

50.   Thalabert's alleged claims for increased construction costs and loss of use damages arising from the August 27, 2020 fire have not yet been submitted to DB (the "Unsubmitted Claims").

51.   Because the Unsubmitted Claims have not been submitted, DB has neither (1) determined whether there is coverage under the Policy for these alleged losses; nor (2) set the value of these alleged losses. Consequently, the Parties have not "fail[ed] to agree on the amount of loss" with respect to the Unsubmitted claims because those losses were never submitted to DB for its consideration.

52.   DB has no obligation to participate in appraisal with respect to the Unsubmitted Claims absent (1) a determination that they are covered under the Policy; and (2) there is a disagreement between DB and Thalabert over the amount of the covered loss.

WHEREFORE, DB prays for relief as follows:

A.   For a binding declaration that DB has no obligation under the Policy to participate in an appraisal on the Unsubmitted Claims unless and until (1) there is a determination that the Unsubmitted Claims are covered under the Policy; and (2) DB and Thalabert disagree as to the amount of the covered loss.

B.   For DB's attorneys' fees and costs;

C.   For such other and further relief as the Court deems just and equitable under the circumstances.

DATED:  Honolulu, Hawaii, July 25, 2022.

        /s/ Ashley R. Shibuya
RICHARD B. MILLER
ASHLEY R. SHIBUYA
Attorneys for Plaintiff
DB INSURANCE CO., LTD
(U.S. BRANCH)